There are three errors in the judgment I'd like to focus on this morning. First, the judgment skipped over our RICO cause of action. Second, the judgment used the wrong test in considering sovereign immunity. And third, the judgment found the conduct of attorneys advocating on behalf of their clients was conduct entitled to judicial immunity. This court approaches all three errors de novo, and I'll start with RICO. We allege that FLEs operated the Blue Lake Tribal Court as a RICO enterprise. Rapport and Marston controlled all the judicial power within that court for the purpose of manufacturing fraudulent judgments on behalf of their clients. These judgments were enforceable in state and federal court. There were many victims over many years. Butan Jones was involved in the fraudulent scheme against us from the get-go, and Jansen Malloy joined in once that scheme began to unravel. We allege mail fraud and wire fraud in the operation of the scheme, and we allege obstruction of justice in the cover-up. Now, many of the facts underlying those allegations are admitted in defendant declarations below. Nevertheless, the judgment skipped over the RICO cause of action and found that sovereign immunity barred the entire action. And this was a... Let me ask you a question, because I'd like you to get to the immunity issues. Let's assume for a moment that there was sovereign immunity for all defendants. I know you contest that. If there was sovereign immunity for all defendants, why would we have to get to the merits of the RICO claim? Well, because as a matter of law, RICO can't apply to sovereign immunity. Is that right? It is. Could you bring a RICO claim against the three of us if Judge Feinerman and Judge Bress and I decided that we, for some corrupt reason, to decide the case in favor of the other side? I understand we could be imprisoned for it, but wouldn't we have judicial immunity for that decision? That's very different than RICO, Your Honor. And so judicial... Well, no. So make us a gang. We all belong to the mafia, and we never told... It seems to me if there's immunity, it extends to all federal statutory claims. I think there's real question in this case whether the immunity decision is correct, but we don't get to the merit, like the district court, we don't get to the merits of your RICO claim unless we get past immunity, do we? So I would give you two cases. I would give you first a Kerry v. Levine, and in that case, that's a recent case, late last year. Governmental entities cannot be RICO defendants. The government can't inform the guilty intent. Okay, Mr. Akers, I think what Judge Hurwitz is asking is, are there any cases holding that there's a RICO exception to sovereign immunity? No, not that I have found, and even Maxwell v. San Diego County in this circuit found that complaints for plainly unlawful conduct are necessarily individual causes of action, and RICO requires pleading criminal conduct. Criminal conduct is plainly unlawful, and so if you just go back to Maxwell, I really believe you're stuck with this idea that RICO, because it's plainly unlawful, is necessarily individual. So, I'm still, your answer to Judge Feinerman's question is you think there's a RICO exception to sovereign immunity? I wouldn't phrase it quite like that, but I would say that Well, I know, but he phrased the question that way, so see if you can answer it. Yes, RICO can never be defeated by sovereign immunity, because a RICO cause of action can never try to command the policy or property of a sovereign. Okay, so why don't you tell us, because I think it's the centerpiece of this case, why the District Court's immunity decisions were incorrect. Well, quite simply, the District Court applied the wrong test, and so sovereign immunity, as I said, really focuses on protecting the policy or property of a sovereign. And so if a remedy in a case would direct the policy or property of a sovereign, then sovereign immunity would bar that remedy from operating. Sovereign immunity does not protect individuals, it does not bar causes of action, it's very much a remedy concept. In the sovereign immunity case law, perhaps not an exception, but at least an expansion, that says if your suit against the individuals is really a suit against the sovereign, that you name the individuals, but you're really trying to recover or get a remedy against the sovereign, the doctrine applies. Why doesn't that extension, if you will, apply to the claims in this case? Because the remedies in this case are exclusively against the individual defendants. So to be blunt, we're trying to take money out of their pockets. Nothing in any judgment in this case would operate against the property or policy of BULIC. Defendants could satisfy any judgment that flowed from this case without even informing BULIC. And so if you look at Maxwell or Lewis, both those cases hold explicitly that you look to the remedy and only if the remedy would legally bind a sovereign in its policy or property is sovereign immunity. Mr. Akers, like Judge Hurwitz, I have some concerns about the District Court's sovereign immunity determination also, but there are a number of defendants here who are either judicial or quasi-judicial actors, and so how I'm speaking specifically about the Tribal Court judge, the clerk of the court, and then three attorneys who seem to be described as the judge of law clerks. How are they not immune from suit based on the personal immunity of judicial immunity or quasi-judicial immunity? Well, so judicial immunity only protects judicial conduct. And so here we very specifically alleged that they were acting as attorneys in matters unrelated to the Tribal Court case. They were representing the CEO of the casino on a state court action as attorneys. They were advocating on behalf of the casino on compact negotiations with the state of California. They were advising the casino on employee disputes while presiding over the case. And if you look at the answer that Judge Marston put out, he admits that much of the conduct we complain of was wholly unrelated to presiding over the Tribal Court case. And so I don't know of any authority out there that holds that judicial immunity pertains to conduct wholly unrelated to presiding over a case. Right, but I mean the test for this is whether these are actions taken, whether you're complaining about actions taken in a judicial capacity or actions that were, you know, taken in the complete absence of all jurisdiction. Neither of those would seem to be true here. You're alleging that the court and the clerks were laboring under a conflict of interest, but the conduct you're complaining about is ultimately judicial conduct. I disagree. I think the conduct we're complaining of is that what for their conduct would cause them to be disqualified. I'm having trouble with that because you're not seeking damages because they did this or did these other things. You're seeking damages as a result of, as you say, this use of the judicial court and its decisions in a bad way. So it seems to me Judge Bress's point is a strong one. At least as to these defendants, what you're really saying is they damaged me by corruptly getting together to make a judicial decision that would be enforceable against me and hurt me. I don't think that we're putting the focus on that judicial decision but if you want to look within the context of the action itself, I would point the court to Forrester v. White. And so in that case, it was held that employment decisions and administrative decisions are not judicially protected conduct. And so within the action itself, we can point to Judge Marston hiring people he knew were attorneys working for Blue Lake. I know, but you're not seeking damages against Judge Marston for hiring those people. If those people were improperly fired, I assume he wouldn't have judicial immunity from a suit. You're seeking damages because of the result of the judicial proceedings, aren't you? No, we embrace the result of the judicial proceedings. We won on the merits. And so we have a judgment that says the cause of action against me personally was conjured and the action against the company was. Right, but you're complaining about the actions taken up to that point while Judge Marston was still presiding. You claimed that you were subjected to an unjustified lawsuit and that he should not have been presiding in the case. But these are all, you're complaining about actions that are quintessentially judicial in nature. No, no. So being an attorney for a party before you is not a judicial conduct. And so look at the Meek test. There's a four-factor test that this court laid out in Meek v. Riverside County. Judicial conduct protects judicial functions, normal judicial functions, that occur in a judge's chamber involving a controversy pending for the court. And the issue has to arise directly out of a confrontation So, nothing in that describes negotiating a compact on behalf of a casino. Nothing in that describes being an attorney for someone. Nothing in that even describes the case assignment. And so we can point to case assignment, I believe, as a non-judicial act if you want to remain within the case. There are a lot of different ways you can assign a case. You can have a computer do it. You can have the clerk do it. Certainly if someone bribed a programmer to mess with the algorithm that deals cases out so that they got a favorable judge, that would be something actionable. That would not be protected by judicial immunity. And so if something by a non-judge would not be protected by judicial immunity, it doesn't become protected by judicial immunity simply because it's done by a judge. And then kind of the other thing I can tell that I have some skepticism, this issue is heard on 12th and 6th and so under this court's precedent, novel legal theories on 12th and 6th deserve factual development. But it's an immunity from suit. That's the point. I mean, if either the immunity is, I don't know what disputed facts you're pointing to that would entitle you to discovery, but the immunity we're talking about is an immunity from suit in the first place. Well, so his billing records, we sought, Judge Marston's billing records, we sought his discovery on those billing records what the specific acts were in it. And so we're saying we have several hundred pages of things they're doing. And we would like them to say whether or not those actions are judicial or attorney-in-chief. Do you have a state court appeal that's ongoing now? Yes. Briefing has been completed. It has not been scheduled. So my understanding is that the state trial court ruled against you. You appealed and then you brought this suit. So the company brought this suit and we felt that. And you? And me. Complaint is verified. We did not bring a recall cause of action originally because there were statements made that allowed us to verify a recall complaint. So during the state court action, it was not admitted that Rapport and DeMars were writing briefs that they were sending to Woodhand Jones to use against us. Sure, but there are a number of overlapping claims between the federal case and the state case. Absolutely. And if had defendants raised that the first time around or earlier, we certainly would have addressed it. My fear was that there was an anti-slap motion in the state court case. So the complaint was frozen and there was no procedural way for me to bring a new recall cause of action. And then you get into the third district court of appeals where we're sitting takes a while. And so I wasn't sure how these statute of limitations would be the best way to preserve the rights. And if there's an error in that, I submit that it should have been raised a year and a half ago during a meet and confer. There were many opportunities to bring that issue forward. And certainly has no bearing on the company's cause of action. Mr. Akers, you're down to a little over a minute. Do you want to save the rest of your time for rebuttal? Please do, unless there's a pressing question. Thank you. Mr. Foreman, are you up first? Yes, Your Honor. Are you able to hear me okay? We can hear you fine. Good. Thank you. I will begin. Good morning. May it please the court. This case gives the court an opportunity to articulate under Maxwell's remedy-focused analysis. When a judgment in an action seeking money damages against an elected or appointed tribal official would interfere with the government administration or the effect of a judgment would be to restrain the tribal sovereign from acting or compelling it to act, thus making the tribe the real party and cloaking the official of the tribe's sovereign immunity. As a government, the tribe can't exercise its authority or vindicate its rights or protect its property except through decisions made and actions taken by a selected or appointed official, including legal action. That's true of every government. What we've said is the way we can tell whether or not a suit is against the sovereign as opposed to the individual is largely through the remedy sought. If the remedy is damages, how does that put aside judicial immunity and other issues in this case? If the remedy sought is damages, how is that a suit against the sovereign? Because Maxwell acknowledged and Lewis versus Clark and Pistor versus Garcia all acknowledged that the court had to be sensitive to not allowing officials to be cloaked with immunity and the impact that might have on the internal workings of the tribal government, even if the only in this case, are you sure that Lewis preserved that part of Maxwell? Because in the second paragraph of Lewis, there's a very stark holding says we hold that in a suit brought against the tribal employee in his individual capacity. The employee, not the tribe, is the real party and interest in the tribe. Sovereign immunity is not implicated. And then to put a finer point on it, the court said basically the same thing at the end of the opinion. So didn't Lewis and Clark just wipe away all the prior three-part tests that the Ninth Circuit and other courts had been applying? No. And remember that the facts in Lewis versus Clark were you're talking about a low-level employee, not an elected or appointed tribal official, driving a limo on the freeway off the reservation. Anybody can cause a car crash. Not everybody can sit as a tribal judge or a vice chair of the tribe or participate in tribal government decision-making or be appointed to serve, in effect, as the tribe's attorney general. The court has an opportunity here to articulate under Maxwell's remedy focused analysis a five-part test we submit It's not a distinction that makes any sense under Lewis v. Clark and all these other cases. If somebody were to sue Judge Feinerman, he has judicial immunity, but he doesn't have sovereign immunity from sue. No. But if somebody were to sue, let's say, an attorney general of the state of California, the state of California has immunized its attorneys acting on its behalf, even when that action is taken maliciously. That's a government quote of 815. Well, but is indemnity, there's lots of cases that involve government officials who are indemnified, and we nonetheless say the mere fact that they may seek money from somebody else to cover their costs just the way the mere fact that your insurance company might cover it doesn't mean that it's a suit against the insurer or the sovereign. It's on its face a suit against the individuals. He doesn't care where the money comes from if he wins. He'd be perfectly happy if it came out of the defendant's pockets. So why is, why does this get transformed into a suit against the sovereign? Because, as Judge O'Rourke observed, entertaining this suit would require me to question the judicial function of the Blue Lake Rancheria Tribal Court. That's a judicial immunity issue, and I hope somebody gets to it, but that's not a sovereign immunity issue, is it? No, sir, that was in the context, because he went on to say, the real party and interest here is the tribe itself, and allowing this litigation to proceed will necessarily influence the ways in which tribal employees and officials carry out their official duties and question a tribe's right to set up and operate its own courts under its own laws. Well, I know Judge O'Rourke said that, and I'm a big fan of Judge O'Rourke. I think he's a terrific judge. But our job in this case is to figure out whether he's right in saying that. So the fact that he said it at a 12-B-6 stage doesn't help me get past what Lewis seemed to say, which is that a suit against somebody in their individual capacity is not a suit against the tribe. He said it with respect to the Blue Lake appellees in a 12-B-1 phase, not a 12-B-6 phase. Right, but it's, it's a, it's a, he hasn't made findings of fact. Well, to simply sweep away any exception to allow a plaintiff to simply purport to limit a remedy to money damages would be basically to destroy the ability of a tribal government to operate. To allow this case to proceed, for example, in discovery, would necessarily intrude on tribal decision-making. Mr. Foreman, I know your time is short. You do represent the Blue Lake defendants. I have questions on the judicial immunity that I want to clarify. So I understand Judge Marston, you believe is entitled to judicial immunity. I understand that argument. You would say Clerk Huff, the clerk of the court, judicial immunity or quasi-judicial immunity? Yes, quasi-judicial immunity. Okay, the law clerk's quasi-judicial immunity. Okay, what about, what about Ramsey? Ramsey would not have judicial immunity. She was sued ostensibly because she's the vice chair of the tribe and participated in the decision-making that led up to the filing of Blue Lake v. Akers. So that's Ramsey. What about Rapwort? Rapwort is the tribe's general counsel and defended the tribe in the judicial attacks that Mr. Akers launched in district court. Okay. All he did was participate in litigation. What about Frank? Judicial immunity or quasi-judicial immunity or not? No, he was the tribe's economic development advisor and participated in internal tribal decision-making that may or may not have led up to the filing of Blue Lake v. ABI. Okay, and lastly, R&M, that's one of your clients as well? Rapwort and Marston is an association of tribal practitioners and had no involvement at all in either the Blue Lake v. Akers or the Akers v. Blue Lake v. ABI or the federal litigation. Okay, but they wouldn't, that association would not receive judicial or quasi-judicial immunity? If in fact they had a relationship with any aspect of this case, since they would be acting on behalf of the tribe, they would be entitled to the tribe's immunity in the same way as a tribe's attorney general would, or the state's attorney general would. I didn't see this in your brief. You're not saying R&M is entitled to quasi-judicial immunity. Maybe they get some other kind of immunity, but I'm talking about quasi-judicial immunity. It's hard to say based on the complaint in what capacity they were even sued. If they were sued because of their relationship to the court, then they would have judicial or quasi-judicial immunity. If they were sued because of their relationship to the court, then they would have judicial or quasi-judicial immunity. Here's the problem, Mr. Foreman. You moved to dismiss the complaint. You said everybody's protected by sovereign immunity. Let's assume we disagree. And now we're trying to go down to defendants because there's an alternative immunity that might be available to some of them. Judicial or quasi-judicial immunity. More prosecutorial immunity. Is there any basis on which R&M could claim on the face of this complaint quasi-judicial immunity? No, they would have prosecutorial immunity to the extent that they had immunity at all. I think that's all Judge Brest was asking. There's a lot of defendants here, and I just wanted your position on each one of them, so thank you. I will yield the balance of our time to Judge Hurwitz. May I ask a question? We'll keep the time independently so that you haven't intruded on your co-counsel's time. Judge Feinerman, you had a question? Sure. I was wondering, did you, on behalf of your clients, move the district court to stay the case, the federal case, under the Colorado River abstention doctrine in light of the proceedings in state court? We did not. Okay. Was that an intentional decision? No. Since this was not involving a federal right that Congress had conferred upon state courts, we didn't think to do that. We had actually suggested in the state court that the state court of appeals stay its proceedings, pending the outcome of this case, and they declined to do so. Okay. Other questions for Mr. Foreman? If not, let's start the clock for Ms. Stermer. Good morning. My name is Deborah Stermer, and I'm representing Boutin Jones, Inc., the law firm, and its attorneys, Daniel Stouffer, who is the lead trial counsel in the matters below, Michael Chase, who appeared at two hearings in the related federal action, and Amy O'Neill, the associate who worked with Mr. Stouffer on the case. I sense some resistance to the notion of sovereign immunity, so I'd like to jump right into what I think the distinction is and why, while we submit that Boutin Jones, notwithstanding that the nomenclature for the lawsuit says they're acting in their individual capacity, I defer to Justice Sotomayor, who I'll paraphrase from Lewis, that you can't just look at the bare allegations of the complaint and decide this issue. Here, I think that while Judge Borick used nomenclature that doesn't fit within the Lewis construct, I believe the facts, when they're analyzed, do, and show that Boutin Jones and its individual lawyers, when you look at the conduct that's alleged against them, were acting as an arm of the tribe, and we're in a situation where the tribe is the client, the tribe is the decision maker, the tribe controls the court. Boutin Jones has no operation of any kind, but the tribe as the client, Boutin Jones is duty-bound to do what is in the best interest of the tribe, zealously advocate on behalf of the tribe, fulfill the tribe's objectives. There's a unity of interest between the principal... There may be a unity of interest, and your clients may have done nothing wrong. That's sort of a separate issue. They may be being unjustly sued. The question is whether or not they're entitled to sovereign immunity, and so even if we apply the Maxwell test, how is it that they're acting as lawyers on behalf of the tribe if a judgment is entered against them will impact the tribe's ability to govern itself? Well, Judge Tora Hurwitz, it's not the money judgment that's at issue. It's the tribe's internal governance and operations. No, I understand, but my question is, when somebody seeks... What the case law seems to say, if it's still alive after Lewis, is that if your suit ostensibly is for money damages, but the result of it will be to impact the ability of the sovereign to govern itself, then perhaps it can be treated as a case justifying sovereign immunity. So my question is, how does a money damages suit against lawyers impact the tribe's ability to govern itself? Well, in one way, I believe that it would make it quite difficult for the tribe perhaps to retain lawyers with the skill and the experience to represent the tribe and engage in the appropriate actions on behalf of the tribe's behalf. I'm not saying that Butch Van Jones accepted this representation of the client because, wow, we get a free pass. We're immune. We share the sovereign immunity. But when you're dealing with situations that go to the heart of the tribe's decision regarding how it operates its trial court and what it instructs its lawyers to do within that trial court, I believe this does go directly to the operations, how the trial court is established, run. All of these are sovereign... The district court dismissed your clients solely on the basis of sovereign immunity did not include them in saying they were judicially immune. I don't know that it's before us, but do you argue, do you contend that your clients are deserving of some other form of immunity from suit? Thank you, Judge Bress. It is not directly before you, but I believe the prosecutorial immunity would extend to the position of Butch Van Jones. Is that something that was argued below? Did you argue that below on behalf of your clients? No, Your Honor, not directly. We argued sovereign immunity. That was my question. Thank you. You had mentioned that part of the Lewis opinion suggested that even though something is styled as an individual capacity to be sued for damages, a court can look through that. What part of the Lewis opinion were you referring to? Which passages or which passage? I was referring, I think it's the first or second sentence of the decision, and I don't have that up in front of me, Your Honor. I apologize, but it was right at the beginning. I'm not saying that that was critical to the court's decision in Lewis, but it is the framework in which the court began the analysis. I believe you'll find that in the very first sentences of the Lewis decision. I think for Lewis decisions, you know, one looks at those facts. I mean, Butch Van Jones is not an employee. He's not a low-level employee. He's not a motorcycle operator, a passenger, a van driver. He's not a paramedic on the scene. It holds a very special relationship with the tribe that imposes vastly different duties on the firm and its lawyers in relationship to their client than the duties of any of these other individuals that claim sovereign immunity because of their work in the course and scope of their employment for the tribe. While Judge Oreck's language, scope of authority, doesn't follow the nominative language of Lewis, I think we'll get to the same result when you look at everything that was done in this case was done on behalf of the sovereign. Right, but I mean, that was true in a case like Pistor versus Garcia, one of our leading cases where the case was a suit against the police chief and other fairly senior officials of the tribe, and the argument could have been made exactly as you make it here, that that would have impacted the tribe's functioning, but nonetheless, it was an individual capacity suit. Sovereign immunity wasn't warranted. Thank you, Judge Brush. I agree that Pistor reached that conclusion, but the facts are different given that it was involved in tribal employees at maybe high level, but they detained individuals, exceeded their authority, they stole money, exceeded their authority. There's a factual finding by Judge Oreck that there was no excess of authority in this case. I'm not sure that's correct. I don't think he made any factual findings. He issued a decision on a motion to dismiss. Well, Your Honor, with all due respect, I believe that we can view this as a factual finding. Under 12v1, he didn't take this as a facial attack. He looked at it as a factual attack and used that language. I find that there is no conduct that's outside the scope of the authority. In any event, the conduct that's alleged against Butan Jones is routine litigation conduct. It's filing declarations with the court. It's sending out proofs of services electronically. We're not talking about inherently criminal conduct. Counsel, I think you've answered Judge Brush's question and you've gone about four and a half minutes over, although it's our fault, not yours. Unless one of my other colleagues has a question for you, we'll move on to Mr. Smith. Thank you, Your Honor. If it pleases the court, I'm Howard Smith. I represent the Pelleys, defendants Jansen Molloy, Megan Yarnell, and Amelia Burroughs, who subbed in to the tribal court case later in the game. Just to follow up what Ms. Stromer said about Lewis, I think what she was referring to is page 1291 to 1292, where the Lewis court makes a distinction about whether the person is sued in an individual capacity or an official capacity. Certainly the driver in Lewis was sued in an individual capacity. It was a standard court case, but it said he was not sued in an official capacity at the time of the accident. Certainly all the defendants in this case have been sued in an official capacity. I don't see how you can say that. Your clients don't have an official capacity. They're lawyers who are retained to represent the tribe in a lawsuit. But obviously they have to give advice to the tribe, they have to confer with the tribe, and the tribe should be entitled to rely upon advice that they get from the lawyer. In an official capacity suit, when the official leaves office, the suit maintains itself. We had a case this morning against Wilkinson, the acting Attorney General. If he were to leave and we have a new Attorney General, the case goes on against the new Attorney General. That is not the case with your clients. They're being sued in a personal capacity. You may disagree with the allegations and have plenty of other defenses against them, but I don't see how you can say they were acting in an official capacity. Okay. But again, I just think the advice that they, like an Attorney General, the advice that they give to the tribe for litigation is something that would be like an official capacity. Well, you know, I once represented a rather large Indian tribe. I never thought I was an official of the tribe because they retained me to represent them. Isn't that all that happened in this case? Your clients were retained to represent the tribe or tribal officials? Oh, if they're representing the tribal officials in the tribal courts, they would have that immunity as they're acting in an official capacity. So no lawyers for a tribe can ever be sued? No outside law firm can ever be sued in any case? Well, here the distinction is they were representing the tribe before the tribal court. They weren't doing commercial litigation. They weren't doing anything unrelated to... It was commercial litigation though. It was about casino machinery. Okay. When I mean commercial litigation, I mean they weren't doing transactional work, which wouldn't be before the court. And I just have a few points I want to make as I go forward. On the RICO claim, there's a factual difference between Jansen Malloy and the other defendants. Jansen Malloy never represented the tribe before Judge Marston. And they weren't a party to the federal court cases. I think that is a distinction if the court reaches the RICO claim that the allegations against Jansen Malloy are different and this would be a different type of application. And last point, if the court does get past the issue, the cause of action, other than RICO, the only cause of action against Jansen Malloy is the malicious prosecution. And that would be bought by the one-year statute of limitations under California Code of Civil Procedure 340.6. So even with... Again, if the court reaches, gets to that issue, they should still rule in favor of the Jansen Malloy defendants. Other questions? Yes. Other questions for Mr. Smith? If not, thank you, counsel. I think you've got about a minute, Mr. Akers. Thank you. I'll just live and die for sovereign immunity on Lewis and Maxwell and close reading of that. On the statute of limitation issue, we don't believe that's properly before the court. That's in our... Let's talk about judicial immunity. I think the case that I'd like to point you to is New Alaska v. Pacheco. That wasn't really prominent in the papers, but it is out there. It's a post-Ashelman case. In that case, a receiver, in his role as receiver, the allegations were he stole and defamed the party he had power over. And this court found that even though those were kind of judicial in nature, that precise act did not satisfy the Meek v. Riverside County test. And so if you look at our breach of a duty claim against Judge to theft and defamation in New Alaska. And then to point about Rappaport v. Marston, even if we cannot get to Judge Marston qua Judge Marston, we can get to him qua partner at Rappaport v. Marston for his managing of this business enterprise that was perpetrating this RICO scheme. A great case for that is Dennis v. Sparks, which holds that those who convince a judge to correctly use his jurisdiction do not share in judicial immunity. And so I would urge the court to look at the judicial independence from that point of view. And if there are no questions, I really thank you for your careful consideration. Any questions from my colleagues? If not, this case will be submitted and having completed the calendar for the week, the court will be adjourned.
judges: Hurwitz, Feinerman, Bress